UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
JAMES S. GENTILE,

                Plaintiff,               MEMORANDUM & ORDER
                                      21-CV-1345 (JS)(ARL)

    -against-

TOURO LAW CENTER,

                Defendant.
-------------------------------X
APPEARANCES
For Plaintiff:       James S. Gentile, Esq., pro se
                   166 Dahlia Drive
                   Mastic Beach, New York  11951

For Defendant:       Janice Sued Agresti, Esq.
                   Cozen O'Connor
                   3WTC 175 Greenwich Street, 55th Floor
                   New York, New York  10007

                   Mariah L. Passarelli, Esq.
                   Cozen O'Connor
                   One Oxford Centre, 41st Floor
                   301 Grant Street
                   Pittsburgh, Pennsylvania  15219

                   Michael B. Newman, Esq.
                   500 Seventh Avenue, Fourth Floor
                   New York, New York  10018

SEYBERT, District Judge:

        Touro Law Center ("Defendant" or "Touro") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff James S. Gentile ("Plaintiff") (hereafter, the "Motion").  (See Motion, in toto, ECF No. 32.)  For the reasons that follow, Defendant's Motion is

GRANTED to the extent Plaintiff's Complaint is dismissed WITHOUT prejudice and with leave to amend within 30 days of this Order.

BACKGROUND[1]

Plaintiff's Complaint was filed on the Court's form complaint for employment discrimination claims.  In his Complaint, Plaintiff gives his date of birth as 1964.  (Compl. at 5.)  Plaintiff alleges that he is "a person with two qualifying disabilities," one of which is "diabetes."  (Id. at 5, 8.)  Plaintiff avers that "[o]n or about October 2018" he "responded to an ad on the employment website Indeed.com for a position" at Touro.  (Id. at 8.)  Plaintiff applied for the position of Director of the Veteran Affair's Clinic (hereafter, the "VA Director" or the "VA Position") and interviewed for that role later that month.  (Id.)

Plaintiff states that, due to his disabilities, he "cannot stand for long periods, and need[s] to use the elevators rather than the stairs."  (Id.)  Plaintiff further alleges that Defendant was twice "notified of [his disability,] [first] during the application process, and [then] at the verbal interview."  (Id.)  Plaintiff contends that the position he applied for "would not require standing for any length of time, and [that] the

_____

[1] The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of this Motion; moreover, all reasonable inferences are drawn in favor of the Plaintiff.

building has easy elevator access." (Id.) Further, Plaintiff notes that during the interview, he "discussed the facilities of the law center" with the interviewer "and it was understood that [the facilities] were adequate for [Plaintiff's] needs." (Id.) Plaintiff alleges that "[a]fter the initial interview [he] was informed by [the] interviewer that [he] was the best qualified candidate for the position, but [that] the Dean of the center would have the final say." (Id.) Additionally, Plaintiff was told by the interviewer that "after a second interview with the [D]ean, the job would be available beginning in January 2019." (Id.)

After several weeks, Plaintiff was informed via telephone that he was not the successful candidate and "that the Dean had decided to hire someone else with more combat military experience and service related medals." (Id.) Plaintiff contends that "the position [had] nothing to do with combat planning or execution," and that "[d]uring [his] hourlong interview in October there was virtually no discussion about [his] military service or medals awarded." (Id.) Plaintiff states that he has military experience having served as "a nuclear weapons specialist, with the highest possible security clearance." (Id.) Plaintiff alleges that the interviewer told him that "he agreed with [Plaintiff's] contention that the position ha[d] nothing to do with any combat or military honors, [] that he still believed [Plaintiff] was the best qualified candidate for the position" and that the interviewer

3

had gone "to bat for [Plaintiff], and argued with the Dean that [Plaintiff] should be hired." (Id.) Nevertheless, Plaintiff avers that the interviewer said that "the Dean dismissed him and hired the other person on his own authority." (Id.)

Plaintiff asserts that the candidate Defendant ultimately hired was "a far less qualified, younger person with no disabilities," who "was not even a lawyer in the military, and was only admitted to the bar for about one year prior." (Id. at 8, 9 (emphasis in original).) Conversely, Plaintiff has "been an attorney in good standing for 18 years." (Id. at 9.)

Further, Plaintiff alleges that one of the reasons he applied to the VA Position was because of "the importance of [the] medical benefits being offered." (Id. at 8.) By way of context, Plaintiff states that several months after the interview, he was "hospitalized due to a heart problem aggravated by [his] diabetes." (Id. at 8.) As a result of his hospital stay, "and lack of insurance," Plaintiff states that he "now owe[s] [] over $60,000 in medical bills." (Id.)

Plaintiff avers that since he pursued legal action, Defendant's "position and explanations about the situation ha[ve] drastically changed" including "that some other unknown person . . . was offered the position after" Plaintiff, "that the Dean, who supposedly declined [Plaintiff's] application, was never even informed that [Plaintiff] was a candidate," and "that the

last several people who held the position had little or no combat experience or were particularly decorated with medals." (Id.)

Plaintiff states that Defendant "stressed that 'veteran' status was important for the job" but that Defendant is "twisting the meaning of veteran to suit [its] narrative." (Id. at 9.) According to Plaintiff, Defendant is interpreting veteran to mean "experience with combat and current active duty military experience" instead of "a person who has served and has been discharged." (Id. at 9.)

In terms of relief sought, Plaintiff demands: (1) "Appointment as" VA Director; (2) "Past earnings of $140,000;" (3) "Compensation for medical costs of $65,000;" (4) "Compensation for medical insurance premiums;" (5) "Any financial incentives, bonuses or other monetary compensation paid out to [the VA] [P]osition from 1/1/18;" (6) "Any other compensation or damages the Court may deem appropriate;" and (7) "Punitive damages [] based on [Defendant's] attempts to modify [the] facts of [the] situation to avoid responsibility for discriminatory practices, if the facts warrant such damages." (Id. at 10.)

<u>PROCEDURAL HISTORY</u>

On November 14, 2019, Plaintiff filed a charge with the Equal Employment Opportunity Commission. (Compl. at 6.) Plaintiff was issued a right-to-sue letter on January 6, 2021. (Id.; see also id. at 14.) On March 12, 2021, Plaintiff filed his Complaint

pursuant to the Age Discrimination in Employment Act of 1967 (hereafter, the "ADEA"), as codified, 29 U.S.C. §§ 621 to 634, and the Americans with Disabilities Act of 1990 (hereafter, the "ADA"), as codified, 42 U.S.C. §§ 12112 to 12117.  (Id. at 1, 3.)  On January 18, 2022, after being granted an extension of time to serve his Complaint, Plaintiff served Defendant.  (See Apr. 12, 2022 Elec. Order.)

　　　　With leave of the Court, (see May 24, 2022 Elec. Order), Defendant filed the instant Motion.  Plaintiff filed his opposition on August 30, 2022, attaching six exhibits not previously presented to the Court (hereafter, the "Extrinsic Evidence").  (Opp'n, ECF No. 35; see also Extrinsic Evidence at ECF No. 35, 24-38 (Docs. 1-6), attached to Opp'n.)  The extrinsic evidence consists of: (1) a doctor's letter stating that Plaintiff was diagnosed with diabetes in 2018; (2) Plaintiff's resume; (3) a job posting for the VA Position; (4) two press releases from Defendant regarding charitable events in which the current VA Director Chad H. Lennon (hereafter "Lennon") participated; and (5) a publicly available copy of Lennon's resume.  (Id.)  Defendant's reply in support of its Motion was filed on September 22, 2022.  (Reply, ECF No. 38.)

ANALYSIS

I.   Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." Twombly, 550 U.S. at 558.  Similarly, a complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.  "Although all allegations contained in the complaint are presumed true" at the motion to dismiss stage, "this principle is 'inapplicable to legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Szewczyk v. City of

N.Y., No. 15-CV-918, 2016 WL 3920216, at *2 (E.D.N.Y. July 14, 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678).

Where "[a] plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, where the pro se plaintiff is a lawyer, "he is not entitled to the special solicitude given to pro se litigants." Azaryev v. City of N.Y., No. 21-CV-3909, 2021 WL 3861773, at *2 (E.D.N.Y. Aug. 27, 2021) (citing Tracy v. Freshwater, 623 F.3d 90, 102 (2d Cir. 2010)).

## II.  Discussion

### A.  Plaintiff's Extrinsic Evidence is not Considered Part of the Pleadings

As an initial matter, the Court first determines whether it can consider the extrinsic evidence attached to Plaintiff's Opposition in deciding Defendant's Motion.

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).  "For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d

Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).  When a "document is not incorporated by reference, the court may [still] consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Id. at 153 (quoting Int'l Audiotext, 62 F.3d at 72).  "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

        "Whether a document is attached to a complaint is self-evident."  DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that any written instrument attached as an exhibit to a complaint is deemed part of the pleadings)).  "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'"  Id. (quoting Helprin v. Harcourt, Inc., 227 F.Supp.2d 327, 330-31 (S.D.N.Y. 2003)).  However, "[l]imited quotation does not constitute incorporation by reference."  McLennon v. City of N.Y., 171 F. Supp. 3d 69, 88-89 (E.D.N.Y. 2016) (quoting Looney v. Black, 702 F.3d 701, 716 n.2 (2d Cir. 2012)).  To be integral to the complaint, a plaintiff must have: (1) "actual notice" of the

9

extrinsic information; and (2) have "relied upon [the] documents in framing the complaint." Chambers, 282 F.3d at 153 (quoting Cortec Indus., 949 F.2d at 48). Indeed, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." Id. (emphasis in original).

Here, Plaintiff's Complaint included four attachments: (1) a letter from the EEOC acknowledging receipt of his claims; (2) a copy of the Charge of Discrimination Plaintiff filed with the EEOC; (3) an email from the EEOC regarding the Agency's determination of the action; and (4) Plaintiff's Notice of his Right to Sue. (See Compl.) Since these documents were attached to the Complaint, they form part of the pleadings, and the Court may consider them in deciding the instant motion. However, Plaintiff's Complaint did not include the Extrinsic Evidence. Neither does Plaintiff make explicit reference to nor quote from the Extrinsic Evidence attached to his Opposition Papers. Although the Complaint makes a passing reference to the job advertisement, it does not articulate the contents of the advertisement, nor does it quote or cite from the advertisement in any way. This falls far short of the "clear, definite and substantial reference" standard necessary for the Court to warrant this document as incorporated by reference or integral to the Complaint. See DeLuca, 695 F. Supp. 2d at 60 (finding that

exhibits attached to affidavit submitted in opposition to motion to dismiss were not incorporated by reference into complaint where "the complaint [made] no explicit or implicit reference to, nor [did] it quote at all from, the exhibits"); Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 124 (S.D.N.Y. 2010) (finding that affidavit and exhibits attached to plaintiff's brief in opposition to motion to dismiss were not incorporated by reference where "plaintiffs' complaint [made] no explicit reference to, nor [did] it quote at all from" either document, and finding that a single "scant reference" in the complaint to one exhibit was insufficient to "meet the high bar courts have set to recognize documents extraneous to a complaint as incorporated by reference" (citation omitted)).

Furthermore, the Court is unconvinced that the Extrinsic Evidence can be considered "integral" to the Complaint.  While Plaintiff clearly had notice of the Extrinsic Evidence -- since they are attached to his Opposition -- there is no indication that Plaintiff actually "relied upon the documents in framing the complaint." Chambers, 282 F.3d at 153 (quoting Cortec Indus., 949 F.2d at 48).  As previously noted, other than the job advertisement, the Complaint neither quotes from nor mentions any of the other Extrinsic Evidence.  Additionally, there is no indication whatsoever that Plaintiff consulted the Extrinsic Evidence during the drafting process. See DeLuca, 695 F. Supp. 2d

11

at 61 (finding plaintiff's extrinsic evidence was not integral to the complaint because: (1) it was "submitted in response to issues raised in [defendant's] motion to dismiss;" and (2) "the complaint [did] not mention, let alone rely heavily upon, [the] the extrinsic documents").[2]

        For these reasons, the Court finds that the Extrinsic Evidence is neither incorporated by reference nor integral to the complaint.[3]   Consequently, the Court will not consider the Extrinsic Evidence as part of the pleadings in deciding Defendant's Motion.

---

[2] Plaintiff's reliance upon Walker v. Schult for the proposition that the Court may consider the Extrinsic Evidence in deciding the instant motion is misplaced. 717 F.3d 119 (2d Cir. 2013). In Schult, the Second Circuit held that "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Id. at 122 n.1 (emphasis added). In so holding, the Second Circuit cited to a case in which the Court had previously considered a pro se plaintiff's affidavit in addition to his complaint in opposing a motion to dismiss. Id. (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)). Here, the Extrinsic Evidence is not an affidavit containing factual allegations, but evidence used to support factual allegations made throughout Plaintiff's Opposition. Additionally, while Plaintiff is pro se he is also a lawyer; as such, he is not entitled to the special solicitude that the Court would ordinarily extend to a pro se plaintiff. See Azaryev, 2021 WL 3861773, at *2. Generally, "[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." Passiglia v. Northwell Health, Inc., 252 F. Supp. 3d 129, 136-37 (E.D.N.Y. 2017) (quoting Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012)).

[3] The Court also notes that there is an issue regarding the authenticity of the Extrinsic Evidence in that Plaintiff himself acknowledges that there may be "differences" in several of the exhibits compared to the originals.

B.   <u>Employment Discrimination</u>

     1.   <u>Plaintiff's Age Discrimination Claim Under the ADEA</u>

Pursuant to the ADEA, it is unlawful for an employer "to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  "To survive a motion to dismiss an age discrimination claim brought under the ADEA . . . a plaintiff must plausibly allege that [he] 'is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  <u>Luka v. Bard Coll.</u>, 263 F. Supp. 3d 478, 484-85 (S.D.N.Y. 2017) (quoting <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 311 (2d Cir. 2015)).  However, "it is not sufficient for a plaintiff to show 'that age was simply a motivating factor' in the employer's adverse action."  <u>Lively v. WAFRA Inv. Advisory Grp., Inc.</u>, 6 F.4th 293, 303 (2d Cir. 2021) (quoting <u>Gross v. FBL Fin. Servs.</u>, 557 U.S. 167, 174 (2009)).  "Instead, 'the ADEA's requirement that an employer took an adverse action "because of" age [requires] that age was the "reason" that the employer decided to act.'"  <u>Id.</u> (quoting <u>Gross</u>, 557 U.S. at 176).  This "but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well."  <u>Id.</u> (citing <u>Comcast</u>

<u>Corp. Nat'l Ass'n of Afr. Am.-Owned Media</u>, 140 S.Ct. 1009, 1014 (2020)).

Defendant argues that Plaintiff "has not plausibly alleged facts sufficient to show age discrimination by [Defendant] in this case." (Motion at 5.) Defendant highlights that Plaintiff "provide[s] only conclusory statements with regard to his age discrimination claim" in that he asserts "that the individual hired by [Defendant] . . . was 'younger' without providing any information to indicate (a) how old that individual is, or (b) how [Plaintiff] would possibly know that person's age." (<u>Id.</u>) Moreover, Defendant argues that the Complaint fails "to establish that [Plaintiff's] age was the but-for cause of [Defendant's] decision not to hire him." (<u>Id.</u> at 6.) Defendant highlights Plaintiff's acknowledgment that Defendant "told him he was not selected for the position based upon a comparative lack of military combat experience and awards." (<u>Id.</u>) Defendant argues that Plaintiff "point[s] to nothing that suggests [this reasoning] was false." (<u>Id.</u>)

Plaintiff attempts to counter Defendant's Motion by primarily relying upon his Extrinsic Evidence, which the Court has already determined it cannot consider. (<u>See</u> <u>supra</u> Part II.A.) Plaintiff counters that: (1) he was over 40-years old "at the time [he] applied to the position;" (2) that he was suffering from the disabilities from which he was hospitalized in 2018; (3) that he

14

was qualified for the position; (4) that the adverse employment action suffered was that he was "not [] hired for [the] position;" and (5) that Defendant's "wanted [to hire] a younger, healthier individual to reap the benefits of good publicity." (Opp'n at 6-7, 11.)  Plaintiff further avers that Defendant's proffered non-discriminatory reason for not hiring him -- that the other candidate had more "military combat experience" and service medals -- was pretextual. (Id. at 11-14.)  Plaintiff argues that the VA Position is an academic role and that military experience and service medals are not relevant to the practice of law or in teaching students. (Id. at 15-17.)  Plaintiff anticipates that it could be argued that the VA Position prioritized combat experience as a requirement because Veterans may feel "more at ease . . . with a person who has shared the experience of combat," but counters that the percentage of veterans who actually see military combat is comparatively low to those who do not. (Id. at 15.)

Here, the Court agrees with Defendant that the Complaint, as pled, is devoid of any facts from which the Court can plausibly conclude Defendant discriminated against Plaintiff based upon his age.  It is true that Plaintiff's Complaint adequately pleads he is a member of a protected class when he applied for the VA Position in 2018 since his date of birth is 1964.  See Fu v. Consol. Edison Co. of N.Y., Inc., 855 F. App'x 787, 789 (2d Cir. 2021) ("The ADEA makes it unlawful for an

employer to . . . 'discriminate against any individual . . . because of such individuals age,' where that individual is 'at least 40 years of age.'" (quoting 29 U.S.C. §§ 623(a)(1), 631(a))).   Additionally, an adverse employment action includes an employer's "refusal to hire." Brown v. N.Y. City Dep't of Educ., No. 20-CV-2424, 2021 WL 4943490, at *7 (S.D.N.Y. Aug. 31, 2021).   However, Plaintiff's Complaint fails to plead any facts whatsoever regarding the relevant academic qualifications for the VA Position, how Plaintiff satisfied those requirements, or how Lennon did not satisfy those requirements. From the Complaint, Plaintiff has pled facts sufficient to show that both he and Lennon boast military experience and that both were qualified attorneys, although Plaintiff argues he was more qualified in this area based solely on the amount of time each was admitted to the bar.   There are no facts pled as to any other relevant academic qualifications necessary for the VA Position that were held by Plaintiff and not by Lennon.   From the Complaint, military experience was a highly desired qualification for the VA position, and both Plaintiff and Lennon met this prerequisite.   On these facts, the Court cannot credit Plaintiff's conclusory assertions that Lennon was "far less qualified" than Plaintiff, (Compl. at 8 (emphasis in original)), such that it can be inferred that, but-for Plaintiff's age, he would have been hired. See Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014)

("While [the court] must ensure that employers do not act in a discriminatory fashion, we do 'not sit as a super-personnel department that reexamines an entity's business decisions.'" (quoting <u>Scaria v. Rubin</u>, 117 F.3d 652, 655 (2d Cir. 1997))). Neither can the Court infer that Plaintiff was qualified for the VA Position without facts establishing what the relevant qualifications for the position were.

Additionally, the Court is unconvinced that the Complaint contains sufficient facts that it can reasonably infer that the proffered non-age explanation for not hiring Plaintiff was pretextual. (<u>See</u> Compl. at 8.) Plaintiff's Complaint acknowledges that "[t]he [Defendant] stressed that 'veteran' status was important for the job." (<u>Id.</u>) The Complaint further states that, like Plaintiff, previous holders of the role, were retired veterans who had little or no combat experience. (<u>Id.</u>) The only reasonable inference the Court can draw from these facts is that military experience, whether demonstrated through actual combat experience, service-related medals, or simply by virtue of service, has always been a quality that Defendant looks for in filling the VA Position. The Complaint tacitly acknowledges that Lennon had military experience and that the Dean credited Lennon's actual combat experience over the experience of other veterans, including Plaintiff. The fact that the Dean's interpretation of the word "veteran" does not comport with Plaintiff's does not mean

that the Dean's prioritization of combat experience was a pretext for age discrimination. Cf. Witkowich v. Gonzales, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008) (finding that "[p]laintiff's disagreement with the way in which the [employer] weighed [plaintiff's] and [another candidate's] qualifications does not create an issue of material fact" because "[a]n employer has the right to decide how it will value the various qualifications different candidates bring to the table").

Relatedly, the Complaint contains no facts supporting Plaintiff's conclusory assertion that Lennon was "younger" than Plaintiff; in fact, the Complaint provides no facts at all regarding the comparative ages of Lennon and Plaintiff, and merely states that Plaintiff "believe[s] [he] was discriminated against on the basis of both [] age and physical disability when [he] was not hired for the [VA Position], but a far less qualified, younger person with no disabilities was hired instead." (Compl. at 8 (emphasis in original).)   This assertion is entirely conclusory and is insufficient even at the pleading stage.  See Iqbal, 556 U.S. at 678 (holding that "a complaint [will not] suffice if it tenders naked assertion[s] devoid of further factual enhancement" (alteration in original) (internal citations omitted)).  Several courts in this Circuit have concluded likewise.  See e.g., Bohnet v. Valley Stream Union Free Sch. Dist. 13, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) (dismissing plaintiff's ADEA claims where

18

plaintiff "allege[d] only that she applied for many positions in the District while she was over the age of forty and the [defendant] did not hire her for those positions but hired younger individuals under the age of [forty]" without providing "any details about the identity of the individuals that the [defendant] hired or their particular ages"); Wang v. Palmisano, 157 F. Supp. 3d 306, 340 (S.D.N.Y. 2016) (finding plaintiff's claim that defendant "offered [] positions to persons significantly younger and/or significantly less qualified than [p]laintiff" to be "utterly conclusory" where plaintiff failed to "provide [] details about the[] putative hires, such as their hire dates, ages, qualifications, work experience, or whether [d]efendants knew their age"); Ndremizara v. Swiss Re Am. Holding Corp., 93 F. Supp. 3d 301, 316-17 (S.D.N.Y. 2015) (dismissing plaintiff's ADEA claims where "[p]laintiff merely assert[ed] that he discovered that many entry level candidates selected or hired by [d]efendant were younger and less qualified than him," and collecting cases).

### 2.   Plaintiff's ADA Claim

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To plead a prima facie case of discrimination under the ADA, a plaintiff must

show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020). Like Plaintiff's ADEA claims, "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." Natofsky v. City of N.Y., 921 F.3d 337, 348 (2d Cir. 2019). Again, "[t]he Supreme Court has clarified [] that the but-for causation standard for discrimination claims applies not only at trial, but also at the pleading stage." Mehta, 2022 WL 280460, at *5 (citing Comcast, 140 S. Ct. at 1014). "Accordingly, to defeat a motion to dismiss, a plaintiff bringing an ADA discrimination claim must plausibly allege that he would not have suffered an adverse employment action but-for his disability." Id.

Defendant argues that Plaintiff's Complaint "does not provide sufficient information from which the Court could determine whether his health condition amounted to a qualifying disability under the ADA" despite alluding to "receiving treatment . . . for diabetes and a heart condition." (Motion at 7.) Additionally, Defendant notes that the Complaint is devoid of any facts supporting Plaintiff's claim that Lennon has "no

disabilities." (Id.) Instead, Defendant contends, Plaintiff's "ADA claim rests entirely on his own assumptions regarding the physical condition of [Lennon], rather than on actual fact." (Id.) Defendant highlights that Plaintiff "disclosed his alleged disability on his Touro job application" and that "he was selected for an interview" despite this. (Id. at 7-8.) Defendant notes that the Complaint is further devoid of any facts "indicat[ing] that the decision-maker . . . had any knowledge whatsoever that [Plaintiff] had an ADA qualifying-disability." (Id. at 8.) As with his age discrimination claim, Plaintiff primarily relies on his Extrinsic Evidence in opposing Defendant's request to dismiss his ADA claims. (See Opp'n at 6-9.) Although most of Plaintiff's opposition focuses on his age discrimination claims, he notes that Defendant "acted as [it] did [] because [it] wanted a younger, healthier individual to reap the benefits of good publicity." (Id. at 11.)

The first element of a prima facie discrimination case is met as Defendant does not dispute it is an entity covered by the ADA. (See Motion in toto.) Additionally, the Court finds that, reading the Complaint liberally, Plaintiff has sufficiently pled facts showing he was a person with a qualifying disability under the ADA at the time of his application, thereby meeting the second element. For example, Plaintiff alleged that: he suffered from diabetes; his interviewer was twice informed of Plaintiff's

disabilities; and Plaintiff's disabilities led to a medical emergency several months following the interview. See Orellana v. Farmingdale Sch. Dist., No. 20-CV-6050, 2022 WL 976811, at *4 (E.D.N.Y. March 4, 2022) ("[A]llegations that [plaintiff] has been diagnosed with, and treated for, diabetes, are sufficient at the pleading stage to raise a plausible inference that [he] has a 'disability' under the ADA."). In terms of the third element, as previously noted, a refusal to hire qualifies as an adverse employment action. See Brown, 2021 WL 4943490, at *7.

However, as to the fourth element, Plaintiff's ADA claims suffer from the same issues as his ADEA claims in that the Complaint is entirely devoid of any facts plausibly alleging that, but-for Plaintiff's disability, Defendant would have hired him over Lennon. For example, the Complaint simply concludes that Plaintiff was not hired because Defendant hired a "less qualified, younger person with no disabilities." (Compl. at 8.) Similarly, Plaintiff's Charge of Discrimination states that Plaintiff believes he was discriminated against because "a lessor qualified, younger, non-disabled applicant was hired." (Charge of Discrimination, ECF No. 1, attached to Compl. at 12.) These conclusory assertions fall well short of pleading facts sufficient to plausibly allege that but-for his disability Plaintiff would have been hired. Plaintiff's ADA claims must fail for this reason.

### 3.   Plaintiff's Request for Leave to Amend

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., 949 F.2d at 48; see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In his Opposition, Plaintiff requested that, if the Court dismissed his Complaint, it do so without prejudice so that he may "refile after fixing any defects the court may find based upon [Defendant's]" Motion. (Opp'n at 19.) Defendant offered no reply on this issue.

While "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted), none of those factors are present here. Consequently, Plaintiff is granted leave to file an amended complaint within 30 days of the date of this Memorandum & Order. Since the Amended Complaint will completely replace the original Complaint, Plaintiff must include all factual allegations and claims that Plaintiff seeks to pursue in this case. PLAINTIFF IS WARNED that if he does not file an amended complaint within 30 days from the date of this Memorandum & Order, judgment will enter and this case will be closed.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss the Complaint (ECF No. 32) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint no later than 30 days from the date of this Memorandum & Order, i.e., April 19, 2023. Any Amended Complaint shall be clearly labeled "Amended Complaint" and shall bear docket number 21-CV-01345 (JS)(ARL). Plaintiff is WARNED that if he does not file an Amended Complaint within 30 days from the date of this Memorandum & Order, judgment will enter and this case will be closed; and

**IT IS FURTHER ORDERED** that Defendant shall answer or otherwise respond to the amended complaint within twenty-one days from the date that it is filed.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 20, 2023
       Central Islip, New York