UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
JAMES S. GENTILE,

              Plaintiff,             <u>MEMORANDUM & ORDER</u>
                                     21-CV-1345 (JS)(ARL)

    -against-

TOURO LAW CENTER,

              Defendant.
-------------------------------X
APPEARANCES
For Plaintiff:        Lois M. Rowman, Esq.
                    195 East Main Street
                    Smithtown, New York  11787

For Defendant:        Janice Sued Agresti, Esq.
                    Cozen O'Connor
                    3WTC 175 Greenwich Street, 55th Floor
                    New York, New York  10007

                    Mariah L. Passarelli, Esq.
                    Cozen O'Connor
                    One Oxford Centre, 41st Floor
                    301 Grant Street
                    Pittsburgh, Pennsylvania  15219

                    Michael B. Newman, Esq.
                    500 Seventh Avenue, Fourth Floor
                    New York, New York  10018

SEYBERT, District Judge:

        Touro Law Center ("Defendant" or "Touro") moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint (the "FAC") (ECF No. 40) of Plaintiff James S. Gentile ("Plaintiff") (hereafter, the "Dismissal Motion"). (<u>See</u> Dismissal Motion, <u>in toto</u>, ECF No. 42.)

For the reasons that follow, Defendant's Dismissal Motion is GRANTED IN PART AND DENIED IN PART.

BACKGROUND[1]

Plaintiff is an adult male born in 1964.  (FAC ¶ 1.) Plaintiff is a military veteran who served "as a nuclear weapons specialist" in the United States Air Force.  (Id. ¶ 66; see also Certificate of Discharge, Ex. A, ECF No. 40, attached to FAC.) Plaintiff is also a lawyer, having earned his law degree at Touro. (Id. ¶¶ 34, 46.)  Plaintiff suffers from, inter alia, diabetes. (Id. ¶¶ 2, 40.)  Due to his condition Plaintiff "cannot stand for long periods" and must use elevators rather than stairs; further, Plaintiff has trouble walking long distances.  (Id. ¶¶ 5, 30-31.)

Sometime in October 2018, Plaintiff "responded to an advertisement on the employment website Indeed.com" to fill a role at Touro as the Director of the Veteran's Affairs Clinic (the "VA Position" or the "VA Director").  (Id. ¶ 36; see also VA Position Job Description, Ex. E, ECF No. 40, attached to FAC.)[2]  Plaintiff

---

[1] Plaintiff's FAC is presented in haphazard fashion mixing Plaintiff's factual allegations with unnecessarily verbose legal argument.  Nevertheless, the Court has gleaned the following facts from the FAC, which are accepted as true for purposes of this Motion; all reasonable inferences are drawn in favor of the Plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Can.) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

[2] Plaintiff has incorrectly labelled his exhibits, and so, for convenience and clarity, the Court has designated the six exhibits affixed to the FAC as A through G respectively.  (See ECF No. 40,

first disclosed his "disabilities and physical limitations . . . during the application process". (Id. ¶ 38.) Notwithstanding Plaintiff's disclosure of his physical limitations, on October 21, 2018, Plaintiff was invited to interview for the VA Position. (Id. ¶ 37.)

The interview was conducted by Assistant Dean Tom Maligore ("Maligore"). (Id. ¶ 38.)  Plaintiff avers during the personal interview with Maligore he again disclosed his disabilities and limitations.  (Id.)  In response, "Maligore advised Plaintiff . . . that the position would not require standing for any length of time; the building had easy elevator access; and the facilities [at Touro] . . . were adequate for his needs."  (Id. ¶ 39.)  After the initial interview, Maligore allegedly informed Plaintiff he "was the best qualified candidate for the position." (Id. ¶ 53.)  Plaintiff was informed, however, "that the Dean of Touro . . . was the decisionmaker." (Id. ¶ 55.) Plaintiff was told the VA Position would be available beginning in January 2019, "after a second interview with the [D]ean".  (Id. ¶ 57.)  Plaintiff alleges that Maligore informed him, during his interview, Touro "wanted to hire someone who would 'stay with the job for many years.'"  (Id. ¶ 151.)

---

at 32-49.)  Hereafter, the Court will simply refer to Plaintiff's exhibits by their respective letters only.

Sometime in December 2018, Maligore informed Plaintiff via phone, "that the Dean had decided to hire someone else with more combat military experience and [service-related] medals." (Id. ¶ 58.)  "Plaintiff complained that this was pretextual and was not in the job description."  (Id. ¶ 59.)  Plaintiff avers that during his interview, "there was virtually no discussion about [his] military service or medals awarded."  (Id. ¶ 63.)  Plaintiff alleges Maligore "agreed with [his] contention that the position had nothing to do with any combat or military honors."  (Id. ¶ 41.) Additionally, Maligore allegedly maintained "Plaintiff was the best qualified candidate for the position."  (Id. ¶ 41.)  Plaintiff alleges further, Maligore told him he "had 'gone to bat' for Plaintiff, and argued with the Dean that Plaintiff should be hired."  (Id. ¶ 43.)[3]  Maligore allegedly informed Plaintiff that, despite his protestations, "the Dean dismissed him and hired the other person on his own authority."  (Id. ¶ 44.)  Plaintiff alleges the previous holders of the VA Position "had little or no combat experience" or service-related medals.  (Id. ¶ 78.)  By way of

---

[3] Plaintiff states in his FAC that, despite Maligore's statement that he advocated for Plaintiff's candidacy, "[t]he . . . Dean, who supposedly declined [his] application, was never even informed that [he] was a candidate."  (FAC ¶ 77.)  Plaintiff does not explain the factual context of this statement.  The inference the Court assumes Plaintiff wishes the Court to draw here is that Maligore, notwithstanding his statement that he advocated for Plaintiff, in fact did not present Plaintiff as a candidate for the Dean's consideration.

example, Plaintiff highlights the previous holder of the VA Position was a retired veteran who served in the Coast Guard. (Id. ¶ 79.)

Plaintiff contends that Chad H. Lennon ("Lennon"), the candidate Touro hired as VA Director, was a "far less qualified, younger person with no disabilities, who was not even a lawyer in the military, and was only admitted to the bar for about one year prior." (Id. ¶¶ 45, 73; see also Lennon Resume, Ex. G.) Conversely, Plaintiff emphasizes he has been an attorney in good standing for two decades.[4] (Id. ¶ 87; see also Plaintiff's Resume, Ex. D.) Plaintiff contends he knows Lennon is younger than forty because they had legal cases together when Lennon was an Assistant District Attorney and he could "see" Lennon was not yet 40-years-old. (Id. ¶ 104-05.) Plaintiff highlights since Touro hired Lennon, Lennon has participated in two physically demanding charity events which Touro "sponsored, advertised and promoted", and to which Touro "received the benefit of good will." (Id. ¶¶ 146-147.)

## PROCEDURAL HITORY

For a thorough recitation of the procedural background of this case, the Court refers the parties to this Court's March

---

[4] Plaintiff also highlights the Job Description for the VA Position requires, inter alia, five years of experience in various areas of law, which Lennon did not possess, but which he did. (Id. ¶ 140-45.)

20, 2023 Memorandum & Order, which the Court incorporates by reference herein.  See Gentile v. Touro Law Ctr., No. 21-CV-1345, 2023 WL 2574441 (E.D.N.Y. Mar. 20, 2023).[5]  The Court adds the following.

On April 19, 2023, in compliance with the March 20, 2023 Memorandum & Order, Plaintiff filed the FAC.  To his FAC, Plaintiff attached seven exhibits: (1) Plaintiff's Certificate of Discharge; (2) Plaintiff's Notice of Right to Sue; (3) Doctor's Letter reflecting Plaintiff's diabetes diagnosis; (4) Plaintiff's Resume; (5) the Job Description for the VA Position; (6) two News Articles Reflecting Lennon's Charitable Works; and (7) a copy of Lennon's Resume.  (See generally Exs A-G.)[6]  The FAC pleads three causes of action: (1) age discrimination pursuant to the Age Discrimination in Employment Act of 1967 (hereafter, the "ADEA"), as codified, 29 U.S.C. §§ 621 to 634; (2) disability discrimination pursuant to the Americans with Disabilities Act of 1990 (hereafter, the "ADA"), as codified, 42 U.S.C. §§ 12112 to 12117; and (3) discrimination in violation of the Uniformed Services Employment and Reemployment

_____

[5] This Court's March 20, 2023, Memorandum & Order is also available on the Case Docket at ECF No. 39.

[6] Since these documents are attached to the Complaint, they are considered part of the pleadings.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that any written instrument attached as an exhibit to a complaint is deemed part of the pleadings.)  Therefore, the Court shall consider them in ruling upon Defendant's Dismissal Motion.

Rights Act of 1994 (hereafter, "USERRA"), as codified 38 U.S.C. §§ 4301 to 4333.

On May 17, 2023, Touro moved to dismiss the FAC.  (See Support Memo, ECF No. 42.)  On June 21, 2023, Plaintiff filed his Opposition (see Opp'n, ECF No. 44), to which Touro replied on July 7, 2023 (see Reply, ECF No. 46).

<u>ANALYSIS</u>

I.   <u>Legal Standard</u>

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must state "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Consequently, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." <u>Twombly</u>, 550 U.S. at 558.  Similarly, a complaint is

7

also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.  "Although all allegations contained in the complaint are presumed true" at the motion to dismiss stage, "this principle is 'inapplicable to legal conclusions' or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  Szewczyk v. City of N.Y., No. 15-CV-918, 2016 WL 3920216, at *2 (E.D.N.Y. July 14, 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678).

II.  Discussion

    A.  Plaintiff's Discrimination Claims

        1. Age Discrimination Claim Under the ADEA

Pursuant to the ADEA, it is unlawful for an employer "to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The Second Circuit "analyze[s] ADEA claims under the burden-shifting framework set forth in" McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 303 n.3 (2d Cir. 2021).  Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case, and may do so by establishing, "(1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he]

experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." Id. (quoting Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012)). "Once a prima facie case is established, the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for the adverse action". Id. (quoting McDonnell Douglas, 411 U.S. at 802). "Although the plaintiff need not make out a prima facie case at the motion to dismiss stage, the prima facie elements nonetheless provide a 'guide-post for the adjudication of a motion to dismiss.'" Pustilnik v. Battery Park City Auth., No. 18-CV-9446, 2019 WL 6498711, at *4 (S.D.N.Y. Dec. 3, 2019) (quoting Vlad-Berindan v. MTA N.Y.C. Transit, No. 14-CV-0675, 2014 WL 6982929, at *10 (S.D.N.Y. Dec. 10, 2014) (citation omitted)).

To defeat a motion to dismiss an ADEA plaintiff must plausibly allege "that age was the 'but-for' cause of the challenged action," i.e., "that the adverse employment action would not have occurred without it." Lebowitz v. N.Y.C. Dep't of Educ., 407 F. Supp. 3d 158, 172-73 (E.D.N.Y. 2017) (citations omitted); see also Lively, 6 F.4th 293 at 303 ("The Supreme Court has clarified recently that the but-for causation standard for discrimination claims applies not only at trial but at the pleading stage as well.") (citing Comcast Corp. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014 (2020)); Mitchell v. N.Y.C.

Dep't of Educ., No. 20-CV-1555, 2021 WL 8013770, at *7 (S.D.N.Y. May 7, 2021), report & recommendation adopted, 2022 WL 621956 (E.D.N.Y. Mar. 3, 2022) ("Under the ADEA, . . . '[t]he plaintiff must show not only that the defendant discriminated on the basis of age, but also that age discrimination was the "but-for" cause of the adverse action, and not merely one of the motivating factors.'" (quoting Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 451 (S.D.N.Y. 2013)); DiResta v. Biz2Credit Inc., No. 21-CV-0208, 2021 WL 6052104, at 3 (S.D.N.Y. Dec. 20, 2021) ("To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action") (quoting Marcus v. Leviton Mfg. Co., Inc., 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order)). At the pleadings stage, an ADEA plaintiff may establish but-for causation either "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015) (citing Littlejohn v. City of N.Y., 795 F.3d 297, 310 (2d Cir. 2015)).

Defendant's primary argument in support of dismissal of Plaintiff's ADEA claim is that Plaintiff fails to plead "a but-for relationship between the purported [age] discrimination and

[Touro's] employment decision."  (Support Memo at 5.)  Defendant highlights that the FAC specifically alleges that Touro informed Plaintiff that it hired Lennon for the VA Position "based upon a comparative lack of military combat experience and awards."  (Id. at 6.)  Defendant avers, while Plaintiff may find the stated reason baseless, "he can point to nothing that suggests it was false." (Id.)   Further, Defendant characterizes Plaintiff's ADEA allegations as conclusory.  (Id. at 5-6.)  Defendant avers, assuming arguendo, Touro hired a younger candidate over Plaintiff, this contention is still "insufficient to breathe life into [Plaintiff's] age discrimination claim" since Plaintiff fails to point to information substantiating his belief that a younger candidate was hired over him.  (Id. at 6.)  Finally, Defendant argues "inasmuch as [Plaintiff] also alleges that he was not hired due to a disability and his military service, even by [Plaintiff's] own account, age was not the but-for cause of Touro's decision not to hire."  (Id. at 7.)

Plaintiff "submits that [Defendant] hired a younger person" and that it is Defendant's burden at the motion to dismiss stage "to show a legitimate non-discriminatory reason for the hire."  (Opp'n at 7.)  Regarding "but-for" causation, Plaintiff asserts this Court cannot dismiss the FAC "at the pleading stage where Defendants offer nothing but speculation as to its legitimate reason for failure to hire".  (Id. at 8.)  Plaintiff highlights

that, presently, "there is no decision from the Dean and no sworn statements to support [Defendant's] legal position." (Id.) Plaintiff maintains he "was licensed to practice law" and had the requisite experience Defendant sought. (Id. at 9.) Plaintiff argues that despite his qualifications, Defendant's hired a younger lawyer with less experience and that they have failed to explain "how a younger law graduate was more qualified to be hired than the Plaintiff." (Id.) Further, Plaintiff's FAC highlights that during his interview, Maligore told him Touro "wanted to hire someone who would 'stay with the job for many years'", which, Plaintiff submits, establishes but-for causation. (See FAC ¶¶ 151-52.)

In the Second Circuit, district courts "generally examine four factors when assessing whether an isolated statement is probative of discriminatory intent or whether it is an insignificant 'stray remark'". Harvey v. Town of Greenwich, No. 21-CV-0771, 2023 WL 5894537, at *5 (D. Conn. Sept. 11, 2023) (quoting Henry v. Wyeth Pharma., Inc., 616 F.3d 134, 149 (2d Cir. 2010)).  These factors are:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

Id.

Here, the Court finds Maligore's alleged remark at Plaintiff's interview, together with Plaintiff's explanation as to how he knows Lennon was not in the protected ADEA age group, suffices, at this stage of the litigation, to sufficiently establish a plausible inference that age may have played an improper consideration in Defendants' decision not to hire Plaintiff.[7]   While "[t]he stray remarks of a decision-maker,

---

[7] At this stage of the litigation, the Court is constrained by the legal standards by which it must assess the FAC.  While Plaintiff's allegations as to his ADEA claim are light, they suffice to proceed to discovery as they provide factual support for Plaintiff's previously conclusory claim he was passed over for a younger candidate.

Additionally, while Defendants urge this Court not to give the Maligore allegation any credence, since it did not appear in Plaintiff's original complaint, (see Support Memo at 2), the Court must, at this stage, accept as true the allegations in the FAC, and draw all reasonable inferences in Plaintiff's favor. Defendants cite no caselaw for the proposition that the Court can ignore this allegation simply because it first appeared in the FAC; in fact, it is black letter law that the filing of an amended complaint completely supersedes the original.  See Braithwaite v. Collins, No. 22-CV-0161, 2022 WL 426165, at *1 (E.D.N.Y. Feb. 11, 2022) (Seybert, J.) ("An amended complaint is intended to replace and [supersede] in its entirety the previous complaint. Once accepted for filing, the amended complaint becomes the operative pleading, and the original complaint is no longer considered." (quoting Bennett v. Fletcher, No. 17-CV-0849, 2018 WL 557885, at *1 (N.D.N.Y. Jan. 18, 2018)); see also Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

without more, cannot prove a claim of employment discrimination", Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001), the Court is cognizant that "the Second Circuit has emphasized that . . . stray comment[s] may 'bear a more ominous significance' when considered within the totality of the evidence.'" Pronin v. Raffi Custom Photo Lab., Inc., 383 F. Supp.2d 628, 637 (S.D.N.Y. 2005) (quoting Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000)). Presently, the Court cannot adequately evaluate the probative nature of Maligore's alleged statement given the lack of a developed record. While, as alleged in the FAC, the final decision maker was not Maligore, but the Dean, the Court cannot determine how influential Maligore may have been in the decision-making process.[8] Likewise, the Court cannot fairly assess the context in which the comment was made or its full content. Consequently, the Court finds it prudent to allow Plaintiff's ADEA claim proceed to discovery.

Additionally, to the extent Defendant argues Plaintiff cannot simultaneously plead an ADEA claim concurrently with his

---

[8] Indeed, the FAC alleges that the Dean was not made aware that Plaintiff was a candidate for the VA Position. This gives rise to the inference that Maligore could have made the decision not to advance Plaintiff's candidacy further, based upon Plaintiff's age, or the perception that due to Plaintiff's age he would not stay in the job for "many years". Unlike Plaintiff's claims regarding Lennon's lack of disability (see infra, Part II.A.2), the Court finds this is a reasonable inference based upon the factual allegations, and, at this stage, it must draw all reasonable inferences in Plaintiff's favor.

ADA and USERRA claims, the Court rejects this argument as without merit.  See Fagan v. U.S. Carpet Installation, Inc., 770 F. Supp. 2d 490, 497 (E.D.N.Y. 2011) ("Where, as here, the circumstances surrounding the adverse employment action could give rise to [an] inference of discrimination on multiple grounds, the ultimate requirement that age be the 'but for' cause to recover on an age discrimination claim does not foreclose a plaintiff from pleading in the alternative.") (citing Ries v. Winona County, No. 10-CV-1715, 2010 WL 3515722, at *10 (D. Minn. July 28, 2010)).

### 2. Plaintiff's ADA Claim

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To plead a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020).  Like Plaintiff's ADEA claims, "the ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment

action." Natofsky v. City of N.Y., 921 F.3d 337, 348 (2d Cir. 2019). Again, "[t]he Supreme Court has clarified [] that the but-for causation standard for discrimination claims applies not only at trial, but also at the pleading stage." Mehta v. City of N.Y., No. 19-CV-3857, 2022 WL 280460, at *5 (E.D.N.Y. Jan. 31, 2022) (citing Comcast, 140 S. Ct. at 1014). "Accordingly, to defeat a motion to dismiss, a plaintiff bringing an ADA discrimination claim must plausibly allege that he would not have suffered an adverse employment action but-for his disability." Id.

Defendant avers the FAC "provides no evidence to suggest how [Plaintiff] has concluded that the individual hired by Touro has 'no disabilities.'" (Support Memo at 7.) Instead, Defendant contends Plaintiff's "ADA claim rests entirely on his own assumptions regarding the physical condition of the hired candidate, rather than on actual fact." (Id.; see also Reply at 4.) Defendant also highlights that, during Plaintiff's interview, Plaintiff was told his limitations would be "no problem at Touro." (Id. at 8.) Similarly, Defendant posits that Plaintiff disclosed on his application "his alleged disability" and was, nonetheless, selected to interview for the VA Position. (Id.)

Plaintiff's primary argument in opposition is that, at the motion to dismiss stage, his contention that "a non-disabled person was hired over Plaintiff", together with the fact he was qualified for the position, and had a qualifying disability under

16

the ADA, suffices to establish his <u>prima facie</u> case.   (Opp'n at 14-16.)

Here, the Court agrees with Defendant that the FAC fails to plead facts sufficient to plausibly allege that but-for Plaintiff's disability he would have been hired.   On the contrary, the FAC establishes Plaintiff disclosed his disability to Touro as part of his application for the VA Position and, notwithstanding said disclosure, Defendant invited him to interview for the position.   Plaintiff's FAC further alleges that, at the interview, after informing Maligore of his limitations, he was told these limitations would not be an issue at Touro.   Plaintiff's FAC pleads no facts alleging Touro responded negatively, or in a manner raising an inference of discrimination, when it learned of Plaintiff's disability.

The only "support" offered for Plaintiff's ADA claim is his conclusory assertion that a non-disabled person was hired instead of him.   The Court finds this argument to be wholly devoid of merit.   Plaintiff's FAC provides no factual support for his allegation that Lennon was not disabled when Defendant hired him. Plaintiff' only support for this allegation are two news articles affixed to the FAC, both highlighting Lennon attempted to raise money for veteran-related charities on two occasions by: (1) pulling a 400-pound chain for one mile in 2019; and (2) hiking across Long Island in 2020.   (<u>See</u> News Articles, Ex. F.)   Plaintiff

asks this Court to infer that Lennon's athletic ability somehow supports Plaintiff's contention Touro hired a non-disabled person over him; the Court declines to draw such an inference.  Rather, Plaintiff's argument ignores the plethora of conditions which can qualify as ADA protected disabilities, but also which could have no effect on an individual's ability to perform athletic feats.[9]

Even assuming <u>arguendo</u> Defendant hired a nondisabled candidate over Plaintiff, this allegation, with nothing more, and together with Plaintiff's own admissions that Defendant: (1) invited him to interview notwithstanding his disabilities; and (2) assured him his disabilities would not be an issue at Touro, is insufficient to plead a viable ADA claim.  <u>See</u> <u>Wernick v. Fed. Rsrv. Bank of N.Y.</u>, 91 F.3d 379, 385 (2d Cir. 1996) ("[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over

_____

[9] By way of example, mental impairments can qualify as disabilities under the ADA where such mental impairment substantially limits a major life activity.  <u>See e.g.</u>, <u>Durr v. Slator</u>, 558 F. Supp. 3d 1, 28 (N.D.N.Y. Sept. 2, 2021 ("Bipolar Affective Disorder has been recognized as a disability under the ADA" (quoting <u>Mercado v. Dep't of Corr.</u>, No. 16-CV-1622, 2018 WL 2390139, at *10 (D. Conn. May 25, 2018)); <u>Dean v. Westchester County P.R.C.</u>, 309 F. Supp. 2d 587, 593 (S.D.N.Y. 2004) ("Depression is considered a physical or mental impairment under the ADA."); <u>Hewitt v. Alcan Aluminum Corp.</u>, 185 F. Supp. 2d 183, 188 (N.D.N.Y. 2001) ("There is little doubt that PTSD can constitute an impairment." (citing <u>Tedeschi v. Sysco Foods of Phila.</u>, No. 99-CV-3170, 2000 WL 1281266, at *3 (E.D. Pa. Sept. 1, 2000)).

those who are not disabled." (alteration in original) (quoting Daughterty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995))).

### 3. Plaintiff's USERRA Claim

One of the primary purposes of USERRA is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). As relevant to Plaintiff's claim, USERRA protects persons who have "perform[ed] service in a uniformed service" from denial of "any benefit of employment by an employer on the basis of that" service. 28 U.S.C. § 4311(a). "To state a claim [under USERRA], a plaintiff must plead 'facts upon which it could plausibly be inferred that his military service . . . was a "substantial or motivating factor"' in the adverse employment action against him." Zeltman v. Infinigy Sols., LLC, No. 20-CV-0571, 2021 WL 2076214, at *3 (N.D.N.Y. May 24, 2021) (quoting Hunt v. Klein, 476 F. App'x 889, 891 (2d Cir. 2012)).

Defendant argues the FAC fails to plead Plaintiff "was denied employment by Touro because of his military service"; rather, Defendant highlights the FAC alleges "that Touro gave preference to another member of the military" when it selected Lennon rather than Plaintiff to fill the VA Position. (Support Memo at 8-9 (emphasis in original).) Defendant argues Plaintiff's USERRA claim must be dismissed since "[i]t is axiomatic that, if Touro selected another individual with military experience, it did

not discriminate against USERRA-protected individuals in making the relevant hiring decision." (Id. at 9.)

Plaintiff contends Defendant has admitted it credited Lennon's greater combat experience and service-related medals in deciding to hire Lennon over Plaintiff. (Opp'n at 20.) Since Defendant argues its hiring decision was made based upon Lennon's comparatively greater military experience, Plaintiff argues his military service was used against him when Defendant made its hiring decision. (Id. at 19-20.)

Here, the Court finds the FAC fails to allege facts giving rise to an inference Plaintiff was treated adversely because of his veteran status. On the contrary, the Court agrees with Defendant that the facts it (1) ultimately hired Lennon, a veteran himself, over Plaintiff, and (2) actively sought to give preference to veterans in filling the VA Position, suggests Touro does not discriminate against Veterans.[10] Indeed, "treating members of a protected group favorably . . . does not give rise to an inference of discrimination when another member of the group is not treated as favorably." Lillico v. Roswell Park Comprehensive Cancer Ctr.,

---

[10] That is not to say that an employer cannot give preference to some members of a protected group while also discriminating against others. See Connecticut v. Teal, 457 U.S. 440, 455 (1982) ("It is clear that Congress never intended to give an employer license to discriminate against some employees . . . merely because he favorably treats other members of the employees' group."); see also Pfunk v. Cohere Commc'ns, LLC, 73 F. Supp. 3d 175, 190 n.12 (S.D.N.Y. 2014).

20

No. 21-CV-0836, 2022 WL 2109207, at *7 n.6 (W.D.N.Y. June 10, 2022). "Instead, it is 'the more favorable treatment of employees not in the protected group' that may give rise to an inference of discrimination." Id. (quoting Littlejohn, 795 F.3d at 312-13 (emphasis in original)).

   B.   Plaintiffs Request for Leave to Amend

        "It is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Indus., 949 F.2d at 48; see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nevertheless, the decision to grant or deny leave to amend "is within the sound discretion of the district court." Bischoff v. Albertsons Cos., Inc., No. 22-CV-4961, 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023). Additionally, while leave to amend is liberally granted, it may properly be denied for, inter alia, "repeated failure to cure deficiencies by amendments previously allowed" or "futility of amendment." Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

        In his Opposition Plaintiff requests leave to amend, for the second time, should the Court grant Defendant's Dismissal Motion. (Opp'n at 21.) Defendant opposes this request arguing Plaintiff has already been afforded the opportunity to amend and further amendment would be futile. (Support Memo at 1; Reply at 5.)

Here, the Court finds further amendment to the complaint would be futile; thus, it denies Plaintiff's request to amend. The Court has previously permitted Plaintiff the opportunity to plead facts supporting a viable ADA claim; yet, despite this opportunity, the FAC remains substantively identical to the original Complaint.  See Bischoff, 2023 WL 4187494, at *7 ("Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.") (collecting cases)).  Indeed, it is clear that the cornerstone of Plaintiff's ADA claim is his perception Defendant discriminated against him because Touro hired an, allegedly, nondisabled candidate for the VA Position instead of him.  Plaintiff, again, pleads no facts supporting his conclusory contention that Lennon was not disabled.  See Eng v. City of N.Y., 715 F. App'x 49, 53 (2d Cir. 2017) (affirming district court's denial of leave to amend a second time where plaintiff "allege[d] no new facts that would cure the pleading deficiencies"); Jackson v. Wells Fargo Home Mortg., 811 F. App'x 27, 30 (2d Cir. 2020) (affirming denial of leave to amend where plaintiff was "already granted one unsuccessful opportunity to amend her pleading with the court below" and where plaintiff "identifie[d] no new facts that would cure the FAC's deficiencies").  Here, again, Plaintiff's allegation regarding Lennon is based solely upon Lennon's participation in two

charitable sporting events while at Touro.[11]  This falls well short of establishing a viable ADA claim, even at the pleadings stage, and demonstrates to the Court that the problem with Plaintiff's ADA claim is substantive.  See Bischoff, 2023 WL 4187494, at *7 (denying plaintiff's request to amend "because '[t]he problem[s] with [Plaintiff's] causes of action [are] substantive,' and 'better pleading will not cure [them]'") (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (alterations in original)).

Likewise, Plaintiff's USERRA claim, by his own admission, is based solely upon Touro allegedly treating Lennon, also a member of the class of persons which USERRA was enacted to protect, favorably, while not treating him as favorably.  This is insufficient to raise an inference of discrimination.  (See supra Part II.A.3.)


[Remainder of page intentionally left blank]

---

[11] As previously stated, Plaintiff's request for the Court to infer Lennon was not disabled simply because he participated in sporting charitable events is unpersuasive given the broad range of disabilities which can qualify under the ADA and which do not render an individual unable to perform sporting feats.  (See supra Part.II.A.2.)

<u>CONCLUSION</u>

For the stated reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss the FAC (ECF No. 42) is GRANTED IN PART AND DENIED IN PART, to the extent that:

1. Defendant's motion to dismiss Plaintiff's ADEA claim is DENIED;

2. Defendant's motion to dismiss Plaintiff's ADA claim is GRANTED, and Plaintiff's ADA claim is DISMISSED WITH PREJUDICE;

3. Defendant's motion to dismiss Plaintiff's USERRA claim is GRANTED, and Plaintiff's USERRA claim is DISMISSED WITH PREJUDICE.

**IT IS FURTHER ORDERED** that Plaintiff's request to amend his complaint is DENIED.

**IT IS FURTHER ORDERED** that the parties are referred to Magistrate Judge Lindsay for all pre-trial matters.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 20, 2024
       Central Islip, New York